UNITED STATES OF AMERICA
WESTERN DISTRICT OF NEW YORK

FAYE JOHANSON, Individually and as Administratrix
of the Estate of ADAM MURR,

          Plaintiff,

                        **Hon. Hugh B. Scott**

      v.                             11CV228A

                             **Report**
                              **&**
                       **Recommendation**

COUNTY OF ERIE and
ERIE COUNTY SHERIFF'S DEPARTMENT,

          Defendants.

      This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 4, referral Order of Mar. 23, 2011). The instant matter before the Court is defendants' Motion for Summary Judgment (Docket No. 30[1]). Responses to this motion were due by October 26, 2012, with any reply due by November 9, 2012, 2012, and this motion was submitted without oral argument (Docket No. 31). Plaintiff requested leave to file an oversize memorandum (Docket No. 33) and this request was granted (Docket No. 34).

---

[1]In support of this motion, defendants submit their Memorandum, their Statement of Material Facts (with exhibits), Docket No. 30; defendants did not submit a reply. In opposition, plaintiff filed her attorney's affidavit (with exhibits, including a compact disk containing an audio recording of the decedent), Docket No. 35; her Response to Defendants' Statement (hereinafter "Pl. Statement"), Docket No. 36; and her Memorandum, Docket No. 37.

BACKGROUND

This is a removed civil rights and negligence action against Erie County and the Erie County Sheriff's Department, arising from the alleged wrongful death of plaintiff's son, Adam Murr, while in custody in the Erie County Holding Center (Docket No. 1, Notice of Removal, Ex. A, Compl. (hereinafter "Compl.")). Plaintiff is the mother and administratix of the estate of Murr (id., Compl. ¶¶ 1, 3; Docket No. 30, Defs. Statement ¶ 1 (hereinafter "Defs. Statement")). Murr died on December 19, 2009 (Docket No. 1, Ex. A, Compl. ¶ 2) while in defendants' custody (see id. ¶¶ 6-8).

On or about December 14, 2009, Murr allegedly robbed a bank in Tonawanda and plaintiff surrendered him to the authorities and he was placed in the Erie County Holding Center (id. ¶¶ 8-9). Prior to Murr's arrest, plaintiff warned these authorities of Murr's prior suicidal tendencies, his drug addiction, and that he would undergo a forced withdrawal while in custody (id. ¶ 10).

In the first cause of action, plaintiff alleges that defendants' negligence and recklessness in supervising Murr resulted in his suicide attempt and death (id. ¶¶ 11-16). She claims that she filed a timely Notice of Claim with the County and that thirty days has expired with no action by the County (id. ¶¶ 17-18). The second cause of action alleged violation of Murr's constitutional rights under color of law (id. ¶¶ 21-22). The third cause of action alleges a claim against defendants on behalf of Murr's distributees (id. ¶¶ 24-26).

Defendants answered on March 21, 2011 (Docket No. 3).

*Defense Motion for Summary Judgment*

According to the undisputed portions of defendants' Statement of Facts (Docket No. 30, Defs. Statement) in support of their summary judgment motion, plaintiff recalls that Murr first

threatened suicide at the age of 15 and would threaten suicide from time to time (Docket No. 30, Defs. Statement ¶¶ 69-71, 74-75), with the last threat being made two years before his detention and the North Tonawanda Police were notified and they transported Murr to the Niagara Falls Memorial Hospital for observation (id. ¶¶ 72-73).

On December 16 through 17, 2009, Murr was incarcerated in the Erie County Holding Center (id. ¶¶ 2, 18). Murr attempted suicide on December 17 and died on December 19, 2009, from injuries he suffered as a result of the attempt (id. ¶ 3).

After plaintiff called the Tonawanda, New York, Police to report that Murr had committed the offense that later had him placed in defendants' custody, the Tonawanda Police called her and she told them that Murr was a heroin addict and was going through withdrawal and had attempted suicide and threatened suicide on several occasions (Docket No. 30, Defs. Statement ¶ 61).

Murr was booked by Deputy Ryan O'Neill (id. ¶ 9), using the suicide prevention questionnaire to screen Murr (id. ¶¶ 12, 17, 21, Ex. F). This suicide prevention screening form posed over sixteen yes or no questions as to the detainee's behavior. If eight or more boxes are checked yes or if any shaded box is checked the screening deputy is to notify the "supervisor and institute [a] constant watch," (id. Ex. F). O'Neill did not check any shaded boxes and only checked yes on one box (whether the detainee had a history of drug or alcohol abuse) for Murr, noting that he used heroin a few days before (id.); plaintiff disputes this (Docket No. 36, Pl. Statement ¶ 24; cf. Docket No. 30, Defs. Statement ¶ 24, Ex. F). The form stated that Murr was not apparently under the influence of alcohol or drugs and that Murr was not thinking about killing himself (Docket No. 30, Defs. Statement, Ex. F). Murr was not placed under constant supervision or referred to mental health and the supervisor was not notified (id.). Plaintiff

3

disputes whether Murr indicated that he was suicidal to O'Neill or exhibited any suicidal tendencies to O'Neill during that screening (Docket No. 36, Pl. Statement ¶ 22; cf. Docket No. 30, Defs. Statement ¶ 22). Plaintiff contends that O'Neill lacked the expertise and ability to detect when a detainee is suffering heroin withdrawal, that O'Neill should have asked more questions about Murr's heroin use as was otherwise indicated in the screening form (Docket No. 36, Pl. Statement ¶ 25). Plaintiff argues that this screening occurred just at the end of the busiest time of the holding center's day (see id. ¶¶ 80-83), with the extent of the screening being strictly asking questions of the detainees to evaluate their needs (id. ¶ 79). She faults defendants for having merely a "very rudimentary protocol in place for drug addiction" in the Holding Center (id. ¶ 87). Plaintiff also disputes whether other deputies noted whether Murr was suicidal when he was placed in his unit (id. ¶¶ 29-33).

Plaintiff states that Murr was scheduled to appear in Tonawanda City Court on December 17, 2009, at 9 a.m.(Docket No. 36, Pl. Statement ¶ 84). Deputy Scott Harvey awakened three other inmates for morning court appearances, but (according to plaintiff) Harvey did not awaken Murr (id. ¶ 85; but cf. Docket No. 30, Defs. Statement ¶ 36 (Harvey made his rounds at 8:15 a.m. to wake up inmates requiring transport for court dates)). Defendants contend that Harvey at approximately 8:45 a.m. saw Murr was sitting on his bunk (Docket No. 30, Defs. Statement ¶ 37; but cf. Docket No. 36, Pl. Statement ¶ 37). Harvey states that he resumed his rounds at 9:01 a.m. and approached Murr's cell and found him hanging by his shoe laces (Docket No. 30, Defs. Statement ¶¶ 38-39; but cf. Docket No. 36, Pl. Statement ¶¶ 38-39, 86). Harvey then cut Murr down, administered CPR, and other deputies and medical staff arrived and continued first aid (Docket No. 30, Defs. Statement ¶¶ 40-44; see also id. ¶¶ 47-48 (subsequent treatment by paramedics and transport to Erie County Medical Center)).

4

Defendants argue that there was insufficient proof of a municipal policy and personal involvement to establish liability under 42 U.S.C. § 1983 (Docket No. 30, Defs. Memo. at 4-7). Alternatively, defendants contend that they were not on sufficient notice of Murr's suicidal tendencies in order to make them liable for his subsequent attempt in their custody (id. at 7-11), pointing to a recorded telephone call between Murr and plaintiff on December 16, 2009, which did not show that he was suicidal or going through heroin withdrawal (id. at 9). Defendants deny that punitive damages are recoverable against them as municipal parties (id. at 12). Defendants next argue that Erie County cannot be held vicariously liable under state law for the acts of unnamed sheriff's personnel (id. at 13-15). They also deny breaching any duty of care owed to Murr under state tort law (id. at 16-17).

Plaintiff disputes whether Murr indicated that he felt suicidal when he spoke with her on December 16, 2009 (Docket No. 36, Pl. Statement ¶ 67). While conceding that Murr did not expressly state to her that he was suicidal and that plaintiff did not alert Erie County Holding Center personnel that she feared for Murr's life (cf. Docket No. 30, Defs. Statement ¶ 67), plaintiff argues that Murr's tone and tenor on the audio recording of the call indicated that he was in severe mental and/or physical distress (Docket No. 36, Pl. Statement ¶ 67). Plaintiff produced a copy of the December 16 recording and transcribed it (Docket No. 35, Pl. Atty. Aff. ¶ 4, Exs. H, H-1 (filed as Docket No. 38); cf. Docket No. 30, Defs. Statement, Ex. M (transcript)). She argues that there are disputes as to whether Murr told his mother that he felt sick because of the heroin withdrawal, that he had suicidal thoughts, or that he wanted to hurt himself or that he needed medical attention (Docket No. 36, Pl. Statement ¶ 66). She contends that Murr said that he was sick, that he was scared, and that he needed drug rehabilitation (id.; Docket No. 35, Pl. Atty. Aff. Ex. H, Tr. at 12, 10, 5, 13). Plaintiff disputes the timing of when

5

Murr received a sick call following the December 17 suicide attempt (Docket No. 36, Pl. Statement ¶¶ 49-50) and the reason for that sick call (id. ¶ 50). She also disputes the findings of Erie County Department of Health chief medical officer Dr. Edwin Heidelberger (id. ¶ 45) that, due to Murr ingesting heroin intra-nasally, he would not have had withdrawal symptoms four days after ingestion (id. ¶¶ 52-53). Based on Dr. Heidelberger's subsequent testimony, plaintiff argues that Murr's admission that he used heroin should have caused the intake deputy to seek more information (id. ¶¶ 89, 88).

She concedes that the Erie County Sheriff's Department is not an independent suable entity, but her claims alleged against the department should now be considered to be lodged against Erie County (Docket No. 37, Pl. Memo. at 22-23; cf. Docket No. 30, Defs. Memo. at 12).

## DISCUSSION

I. Standards

   A. Motion for Summary Judgment Standard

Defendants moved for summary judgment and such a motion is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins.

Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

      The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011). The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3). The purpose of these statements, and the appendix of supporting evidence, id. R. 56.1(d), is to summarize and highlight for the Court the potential material factual issues, the authority in the

7

evidentiary record for the purported facts, and whether the parties believe they are in dispute. Both parties submitted statements or countering statements with attached materials. Defendants did not reply to plaintiff's statements she believed were not in dispute that she added at the end of her Statement (cf. Docket No. 36, Pl. Statement ¶¶ 79-92).

B.   Civil Rights Claims Standard

Plaintiff's civil rights claims arising from Murr's suicide are deliberate indifference claims, Estate of Sisk v. Manzanares, 262 F. Supp. 2d 1162, 1175 & n.22 (D. Kan. 2002) (citation omitted) (Docket No. 30, Defs. Memo. at 7); see also Estate of Rodriguez v. Simon, No. 2:06-cv-125, 2007 U.S. Dist. LEXIS 55982, at *16 (D.Vt. Mar. 30, 2007) (Niedermeier, Mag. J.); Gordon v. Kidd, 971 F.2d 1087, 1095 (4th Cir. 1992). Under the Eighth Amendment, plaintiff has the burden of proving that defendants acted with deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The Eighth Amendment applies to prison officials when they provide medical care to inmates. Hathaway, supra, 37 F.3d at 66; see Estelle, supra, 429 U.S. at 103. "To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104). Mere negligent treatment or malpractice upon a prisoner, however, does not create an Eighth Amendment violation. Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972).

8

A similar standard applies, as here, to pretrial detainees under the Due Process Clause of the Fourteenth Amendment against deliberate indifference to a detainee's medical needs, Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (deliberate indifference claims under either Eighth Amendment or Fourteenth Amendment analyzed under same standard); Estate of Rodriguez, supra, 2007 U.S. Dist. LEXIS 55982, at *10; Gordon, supra, 971 F.2d at 1094; Clinton v. County of York, 893 F. Supp. 581, 584 (D.S.C. 1995), including the medical need of the detainee to be protected from himself, see Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). While in custody, a pretrial detainee has a Fourteenth Amendment substantive due process right to care and protection, even against self destruction, Cuoco v. Moritsugu, 222 F. 3d 99, 106 (2d Cir. 2000); Weyant, supra, 101 F.3d at 856.

To show defendants' knowledge of a strong risk of suicide, plaintiff would have to show that defendants were aware of a previous threat or attempt at suicide, Clinton, supra, 893 F. Supp. at 585 (id.); Edwards v. Gilbert, 867 F.2d 1271, 1275 (11th Cir. 1989) ("In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation . . . that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference"). As found by the United States District Court for the Northern District of New York, "in the context of suicide, jailers are not required to safeguard every inmate; only those presenting a 'strong likelihood of suicide' are entitled to protection," Jean v. Barber, No. 9:09-cv-0430, 2011 U.S. Dist. LEXIS 79495, at *10 (N.D.N.Y. June 28, 2011) (Lowe, Mag. J.), quoting Burke v. Warren County Sheriff's Dep't, No. 9:00-cv-597, 1994 U.S. Dist. LEXIS 17233 (N.D.N.Y. Nov. 25, 1994). To establish the strong likelihood of suicide, the detainee has to make a previous threat or attempt suicide, Jean, supra, 2011 U.S. Dist. LEXIS 79495, at *10 (citing cases).

9

The classic deliberate indifference claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind. Hathaway, supra, 37 F.3d at 66. Included within the objective component is defendant's knowledge of the underlying medical condition, see Hamilton v. Fisher, No. 9:10-cv-1066, 2012 U.S. Dist. LEXIS 39118, at *15 (N.D.N.Y. Feb. 29, 2012); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66). Plaintiff needs to prove that defendants wantonly intended to cause him to suffer. Wilson v. Seiter, supra, 501 U.S. at 302.

      C.      Municipal Liability

Defendants argue that plaintiff needs to identify a municipal policy or custom that caused her injuries in order to state a § 1983 claim, because mere respondeat superior is not enough to state such a claim (Docket No. 30, Defs. Memo. at 4-7).

II.      Application

      A.  Deliberate Indifference

This case hinges upon the notice defendants were given of Murr's suicidal tendencies prior to his detention. Plaintiff points to prior suicide attempts and interventions by the North Tonawanda Police, and her notice to the Tonawanda Police after Murr's arrest of his suicidal tendencies and heroin addiction and withdrawal, as well as the tenor (if not the text) of Murr's telephone call to plaintiff on December 16, 2009. Defendants, however, argue that there was no

actual or constructive knowledge on their part that Murr would commit suicide (Docket No. 30, Defs. Memo. at 8).

This Court reviewed the transcript and the audio recording of Murr's telephone call to plaintiff on December 16, 2009. At points during the call both Murr and plaintiff sounded distressed (see Docket No. 35, Pl. Atty. Aff. Ex. H-1, Docket No. 38). The discussion revolved around plaintiff declining to put up property for Murr's bail, Murr making arrangements to get his property from his girlfriend's residence, and the fact that he faced ten years in state custody if convicted and the possibility of a federal prosecution as well (see Docket No. 35, Pl. Atty. Aff. Ex. H). Murr talked about going away and disposing of his property as if he were going away for a long period of time or to dispose of the property to raise funds. This recording would lead to issues of material fact as to Murr's intentions precluding summary judgment but for the requirement that defendant be on notice that Murr was suicidal in order for plaintiff to state a deliberate indifference claim for failing to prevent Murr's suicide. This telephone call is ambiguous and, although monitored by defendants, does not put them on notice of Murr's suicidal tendencies. Was Murr upset due to suffering a heroin withdrawal or because of his detention and its impact on his relationships? Was Murr concerned about disposing of his property for a potential prolonged prison stay or due to his expected demise? This call, with the screening process conducted by Deputy O'Neill, is not sufficient to put defendants on notice of Murr's condition and potential actions.

What plaintiff fails to present, however, is the notice to these defendants of Murr's prior suicides or his emotional and mental state at the time of his admission to the Erie County Holding Center. Plaintiff does not show that the Tonawanda Police passed along her reports to the Erie County Sheriff's office when they transferred Murr to the Sheriff's custody. The State

11

Commission of Correction, in its after-incident report on Murr's suicide, noted that defendants and the Tonawanda Police Department did not have a protocol for transferring screening information to relay reports of a detainees suicidal intentions to the Sheriff, while the Tonawanda Police did not participate in the suicide prevention program for county jails and lock ups (Docket No. 35, Pl. Atty. Aff. Ex. J, Final Report of Sept. 27, 2010, at 3 ¶ 9; see Docket No. 37, Pl. Memo. at 10). Murr, in answering Deputy O'Neill's screening questions, did not give O'Neill the impression that Murr was suicidal. Plaintiff merely claims that whatever screening process that occurred for Murr was rushed due to the volume of detainees that needed to be screened (see Docket No. 37, Pl. Memo. at 6).

Plaintiff, therefore, fails to establish the requisite notice of a suicide threat to make defendants liable under § 1983 for deliberate indifference to Murr's medical condition. Absent prior notice of Murr's attempted suicide, any official misconduct in failing to prevent his last attempt does not constitute deliberate indifference, Jean, supra, 2011 U.S. Dist. LEXIS 79495, at *10-11; see also Rellergert v. Cape Girardeau County, 724 F. Supp. 662, 666 (E.D. Mo. 1989). Even if notice were established, plaintiff fails to show how defendants were sufficiently culpable and having sufficient wantonness to meet the subjective component of a deliberate indifference claim.

For these reasons, defendants' motion for summary judgment (Docket No. 30) dismissing plaintiff's second cause of action should be **granted**.

B. State Negligence Claims

What remains is plaintiff's supplemental state law negligence claims. Section 1367 of Title 28 of the United States Code grants this Court supplemental jurisdiction over state law claims, provided that the Court has original jurisdiction over the case (that is, at least one federal

claim remains pending). When all original jurisdiction claims are dismissed, the Court may decline to exercise supplemental jurisdiction. Id. § 1367(c)(3); see, e.g., Baines v. Masiello, 288 F. Supp. 2d 376, 395 (W.D.N.Y. 2003) (Curtin, J.).

Here, plaintiff argues that defendants were negligent in screening Murr upon his admission to the Holding Center, in detecting and treating him for heroin withdrawal, and in monitoring for suicide prevention. Defendants would have needed to be on notice of Murr's condition, and notice was not provided by the Tonawanda Police Department when they turned Murr over to the Sheriff.

As plaintiff states (Docket No. 37, Pl. Memo. at 28), under New York tort law, prison authorities owe a duty of care to its detainees to provide for their health and care "including the duty to protect a prisoner from harming himself," Gordon v. New York, 70 N.Y.2d 839, 845 (1987). In Gordon, the New York State Court of Appeals found that "[i]f prison authorities know or have reason to know that the prisoner might do harm to himself or to others, reasonable care must be used to assure that such harm does not occur, and certain factors, such as the prisoner's mental state, are to be considered in determining how to prevent the harm," id. (id.).

As stated above, plaintiff fails to show that these defendants knew or had reason to know that plaintiff might do harm to himself. Plaintiff concedes that the same substantive standard for the federal civil rights claims apply to her state negligence claim (id. at 29). The only fact she points to is that Murr told Deputy O'Neill that he had used heroin four days prior to his detention. This alone, without any other information, is not sufficient notice to defendants that he might do harm to himself. To Deputy O'Neill, Murr did not manifest any apparent symptoms of heroin withdrawal; when asked if he thought about killing himself or had attempted suicide in the past, Murr denied those thoughts or acts (see Docket No. 30, Ex. F). These defendants were

13

not relayed the warnings plaintiff gave to the Tonawanda police regarding plaintiff's son's addiction and suicide attempts. Therefore, defendants should not be held liable for failing to prevent Murr's suicide where they had no notice of Murr's condition.

On plaintiff's state law causes of action, defendants' motion for summary judgment (Docket No. 30), should be **granted** or, alternatively, this Court should **decline** to exercise supplemental jurisdiction over those causes of action.

C. Municipal Liability

Defendants also argue that plaintiff fails to show a municipal policy or that the County could be held liable for the actions of unnamed Sheriff's Department employees. Given the disposition recommended above to dismiss plaintiff's claims on the merits, this Court need not address whether Erie County (as opposed to its employees) should be responsible for plaintiff's claims.

**CONCLUSION**

Based upon the above, it is recommended that defendants' motion for summary judgment (Docket No. 30) be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                        */s/ Hugh B. Scott*
                                        Hon. Hugh B. Scott
                                        United States Magistrate Judge

Dated: Buffalo, New York
       December 17, 2012